## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN ARNDT,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHNSON & JOHNSON, et al.,** | : | **NO. 12-6633** |
| **Defendants.** | : | |

### MEMORANDUM

PRATTER, J.                                                        DECEMBER 17, 2014

Shawn Arndt brought suit against the manufacturers of Infants' Tylenol following his 4-year-old son's tragic death after ingesting one dose of the medication.  The Defendants moved to dismiss his Complaint, and following oral argument on that motion, Mr. Arndt filed an Amended Complaint.  The Defendants have now moved to dismiss all but one claim in the Amended Complaint, arguing that the statute of limitations bars all but Mr. Arndt's implied warranty claim.  After considering the parties' briefing and hearing oral argument on November 24, 2014, the Court will grant Defendants' motion in part and deny it in part.

### BACKGROUND

On November 2, 2009, Shawn Arndt, a New York citizen, purchased a bottle of Infant's Tylenol at Tops Market and administered one dose to his 4-year-old son Joshua, who had a slight fever.  Within minutes, a parent's nightmare ensued when Joshua started bleeding from the nose and mouth.  He was rushed to the hospital and, tragically, pronounced dead upon arrival.

In January, 2010, federal investigators evaluated the Fort Washington, PA manufacturing plant of McNEIL-PPC, a Johnson & Johnson ("J&J") subsidiary, and over the following months discovered a number of quality control issues.  That investigation culminated in an April 30, 2010, recall of defective lots of Infants' Tylenol and other children's medication.  The recall

1

covered the bottle purchased by Mr. Arndt.  J&J also shut down its manufacturing facility at Fort Washington, where Infants' Tylenol was made.  Thereafter, during a Congressional investigation, it came to light that McNEIL's Fort Washington plant, where various children's medications were manufactured, including Infants' Tylenol, had had pervasive quality control problems for several years, including well before the death of Joshua Arndt, and that J&J knew of these issues, failed to remedy the problems and/or took steps that potentially exacerbated them, and failed to inform the public.  Moreover, the investigation also disclosed that with the help of former Defendants Inmar, Carolina Logistics, and Carolina Supply Chain Services (the "Inmar Defendants"), McNEIL and J&J had planned and implemented a stealth or phantom recall of various children's medication some time before September, 2009.  Indeed, in September, 2009, J&J issued a limited recall of some lots of Children's and Infants' Tylenol based on the "post-marketing safety surveillance data" collected during the phantom recall. Instead of broadly publicizing that recall, however, J&J only informed healthcare professionals.

On October 31, 2012, Mr. Arndt filed suit in the Philadelphia Court of Common Pleas, asserting 19 causes of action against 16 defendants, including strict liability, negligence, consumer protection violations, recklessness, breach of express and implied warranties, civil conspiracy, and negligent infliction of emotional distress.  Defendants removed the litigation to this Court, and Mr. Arndt filed a motion to remand.  The Court denied that motion and dismissed several fraudulently joined Defendants from the action.  The Inmar Defendants filed a motion to dismiss, which the Court granted because there is no causal link between any "phantom recall" and Mr. Arndt's damages.  J&J, McNEIL-PPC, and J&J Sales and Logistics Company (collectively referred to herein as "J&J" or the "J&J Defendants") also filed a motion to dismiss. After oral argument on that motion, the Plaintiff filed an Amended Complaint, rendering the

pending motion to dismiss moot.  Now pending before the Court is the J&J's second motion to dismiss.

LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994);

*see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand that the Court ignore or disregard reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

DISCUSSION

### A. *Fraudulent Concealment*

J&J seeks dismissal of the bulk of Mr. Arndt's claims by arguing that they are barred by

Pennsylvania's two-year statute of limitations.[1]  Mr. Arndt counters that the doctrine of

fraudulent concealment saves his claims, citing the J&J's failure to inform the public of

pervasive quality control issues, the "phantom recall," and various statements made at

Congressional hearings following a recall of Infants' Tylenol and other children's medication as

examples of fraudulent concealment pled in his Amended Complaint.  He has also included two

paragraphs in his Amended Complaint specifically directed at fraudulent concealment:

> 31. Shawn Arndt informed Defendants about his son's death.
> 32. Consistent with Johnson & Johnson's true corporate culture of concealment,
> obfuscation and denial, Defendants intentionally hid from Shawn Arndt that the Infants'
> Tylenol he gave his son was defective.

Am. Compl., ¶¶ 31-32.  He does not say when this occurred, what was said to him by Defendants

(if anything), or any details that might suggest that it was reasonable for him to rely on what was

said to him (or even that he did rely on whatever was said).

The doctrine of fraudulent concealment tolls the running of the limitations period in

Pennsylvania when the defendant, through an independent affirmative act of concealment, causes

the plaintiff to relax his vigilance or deviate from his right of inquiry through fraud or

concealment.  *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 278

(Pa. 2005).  Rather than requiring actual knowledge, fraudulent concealment only tolls the

---

[1]     Aside from an argument as to which statute of limitations applies to the Plaintiffs' New York
Consumer Protection Act claim, the parties agree that Pennsylvania's two-year statute of limitations and
its accompanying tolling doctrines apply.  The New York Consumer Protection Act claims will be
discussed separately, *infra*.

limitations period until the plaintiff *should have been* aware of the injury or its cause.  *Urland By and Through Urland v. Merrell-Dow Pharmaceuticals, Inc.*, 822 F.2d 1268, 1274 (3d Cir. 1987). Reliance on the conduct of the defendant must be reasonable and justifiable in order to invoke tolling principles.  *DeMartino v. Albert Einstein Medical Center, Northern Div.*, 460 A.2d 295, 301 (Pa. Super. Ct. 1983).

Reliance on the defendant's conduct when the plaintiff has reason to believe otherwise is not reasonable reliance and will not toll the statute of limitations.  *DeMartino v. Albert Einstein Medical Center, Northern Div.*, 460 A.2d 295, 302 (Pa. Super. Ct. 1983); *see also*, *In re TMI*, 89 F.3d 1106, 1117 (3d Cir. 1996) (denying tolling of the statute of limitations under the doctrine of fraudulent concealment where significant amounts of information about the Three Mile Island incident were freely available to the public such that it was no longer reasonable to rely solely on statements made by the defendants).

Fraudulent concealment must be pleaded in the complaint in order to avoid dismissal when it is clear from other facts in the complaint that the claim would otherwise be time barred. In *Baselice*, the court granted the motion for judgment on the pleadings on the basis of the statute of limitations because the plaintiff failed to effectively plead fraudulent concealment.  879 A.2d at 279.  The plaintiff did not plead that he conducted any investigation in the relevant timeframe; nor did the plaintiff allege that the defendants' conduct disguised either the injury or its cause, and the plaintiff did not allege that the defendants' conduct caused him to "forgo pursuit of his cause of action."  *Id.*  Federal pleading standards require that a plaintiff at least "plead the applicability of the doctrine" to survive a motion to dismiss based on a statute of limitations defense.  *See Perelman v. Perelman*, 545 F. App'x 142, 151 (3d Cir. 2013) (upholding dismissal of case on statute of limitations grounds when the plaintiff "pled no facts that suggest an

affirmative act of fraud or concealment").  Moreover, Rule 9(b) requires that fraudulent

concealment must be pleaded with specificity.  *See Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d

620, 626 (3d Cir. 1984) ("We agree, of course, that fraud, and thus fraudulent concealment, must

be pleaded with particularity.").

Mr. Arndt claims that tolling of the statute of limitations under the doctrine of fraudulent

concealment is a jury question.  For this proposition, Mr. Arndt relies on *Hoppe v. SmithKline*

*Beecham Corp.*, 437 F. Supp. 2d 331 (E.D. Pa. 2006), in which summary judgment was denied

because the factual record relating to alleged fraudulent concealment on the part of the defendant

had not yet been developed.  *Hoppe*, however, does not explain that the issue of fraudulent

concealment *always* must be submitted to the jury, no matter how bare the allegations.  Indeed,

as noted above, the Third Circuit Court of Appeals has affirmed the dismissal based on a

plaintiff's failure to adequately plead fraudulent concealment.  *See Perelman*, 545 F. App'x at

151; *see also Leonard v. City of Pittsburgh*, No. 13-0455, 2013 WL 4541727 at *8 (W.D. Pa.

Aug. 27, 2013) (dismissing the plaintiff's claim with prejudice because the plaintiff could not

plead facts which would toll the limitations period under fraudulent concealment or any other

doctrine).

Mr. Arndt points to his allegations concerning J&J's cover-up of manufacturing defects,

including statements made during Congressional hearings and the so-called phantom recall (and

other acts done prior to Joshua Arndt's ingestion of Infants' Tylenol), and contends that these

acts amount to compelling and convincing evidence of fraudulent concealment on the part of the

J&J.  Mr. Arndt argues that discovery will uncover further acts of a similar nature.  To the extent

that Mr. Arndt relies on acts like the phantom recall and other instances of J&J's failure to

inform Mr. Arndt or the public of various manufacturing issues, such acts cannot constitute

fraudulent concealment.  "While we have recognized that a party's silence could in some circumstances constitute fraudulent concealment, such a situation occurs 'only where there is an affirmative duty to disclose because of a fiduciary relationship between the parties or a similar relationship of trust and confidence.'"  *Leonard v. City of Pittsburgh*, 570 F. App'x 241, 245-46 (3d Cir. 2014) (quoting *Mest v. Cabot Corp.*, 449 F.3d 502, 517 (3d Cir. 2006)).  To hold that a manufacturer has that type of special relationship with consumers would render the statute of limitations meaningless in a great number of products liability cases.

In addition, many of the acts about which Mr. Arndt complains, such as the phantom recall and failures on J&J's part to disclose manufacturing issues to the public, occurred prior to his son's death.  As this Court has previously noted, Joshua Arndt's shocking death put Mr. Arndt on inquiry notice of his claims.  *See Arndt v. Johnson & Johnson*, Civil Action 12-6633, 2014 WL 882777, at *8 (E.D. Pa. Mar. 5, 2014) ("Mr. Arndt's son took a dose of Infants' Tylenol for a slight fever, immediately fell gravely ill, and died within a matter of hours.  Given these circumstances, Mr. Arndt was clearly on inquiry notice at the time of his son's death.").  Thus, Mr. Arndt cannot rely on J&J's conduct *before* his son's death for his fraudulent concealment argument.  Once he was on inquiry notice, he had a duty to investigate and only an additional affirmative act of concealment by the Defendants upon which he reasonably relied could excuse him from his duty to investigate his claims.[2]

To the extent that Mr. Arndt relies on his allegations that after telling J&J about his son's death, "Defendants intentionally hid from Shawn Arndt that the Infants' Tylenol he gave his son was defective," such an allegation lacks the specificity required to plead fraudulent concealment.

---

[2] The Court notes that less than six months *after* his son's death, the bottle of Infants' Tylenol Mr. Arndt purchased was recalled as part of a large-scale public recall of defective children's medication.  Thus, even if his son's death was not enough to put him on notice, that recall surely would have or should have done so.

Mr. Arndt does not plead when, what, who, or how J&J hid anything from Mr. Arndt.  Given that

Rule 9(b) applies, this vague allegation does not sufficiently support a claim of fraudulent

concealment.

As for the statements before Congress, the most promising for Mr. Arndt, at face value, is

this one:

> Mr. Cummings[:] Mr. Weldon, in your testimony you stated that McNeil believed that the
> phantom recall was an expeditious way to remove the remaining caplets from the
> convenience store shelves. If the product was not good enough or safe enough to sell,
> why would it be good enough for consumers to keep it in their homes, in their medicine
> cabinets?
> Mr. Weldon[:] Sir, first of all, I think we had looked at this closely and determined there
> was no risk, no safety hazard, no risk to patients who consumed these products.

*Johnson & Johnson's Recall of Children's Tylenol and Other Children's Medicines and the*

*Phantom Recall of Motrin: Hearing Before the H. Comm. on Oversight and Gov. Reform*, 111th

Cong. 61, (2010) (question of Rep. Elijah E. Cummings; response of William C. Weldon,

chairman and CEO, Johnson & Johnson).  However, this statement is made specifically in

reference to a phantom recall of *Motrin* caplets and not to *Infants' Tylenol* and does not appear to

have anything to do with any Defendants' position on the safety of Infants' Tylenol.  Even

statements that could be construed as downplaying the risks of Infants' Tylenol must be

evaluated in context – these occurred in the course of a Congressional investigation *following* an

FDA investigation and a massive recall of medication which included the bottle of Infants'

Tylenol Mr. Arndt purchased.  Thus, Mr. Arndt would be hard-pressed to allege any reasonable

reliance on those statements.

Finally, even if Mr. Arndt had adequately alleged affirmative acts of concealment on the

part of J&J, Mr. Arndt has not alleged in his Amended Complaint that he undertook *any*

investigation to discover the cause of his injuries prior to November 2010, nor has he alleged that

the Defendants' conduct caused him to deviate from the path that would have led him to discover

the cause of his injuries (*i.e.*, that he reasonably relied on any acts or statements of J&J). Therefore, Mr. Arndt has not adequately pled facts to invoke the doctrine of fraudulent concealment and that doctrine is unavailing to him.

### B. *New York Consumer Protection Law*

Mr. Arndt alleges that J&J violated §§ 349 and 350 of the New York Consumer Protection Act ("NYCPA").  Mr. Arndt charges that J&J violated these statutes by failing to provide information to consumers about manufacturing defects, by marketing their products as safe, and by conducting the phantom recall of pediatric medicines. Mr. Arndt also alleges that J&J's statements regarding the safety of pediatric medicines made after Mr. Arndt's injuries violate the NYCPA.[3]  J&J argues that these claims are barred by the statute of limitations.  J&J also argues that, to the extent the claim is based on an allegation of false advertising under § 350, Mr. Arndt has failed to plead that he saw or relied upon any false advertisement.  J&J does not attack the   § 349 claim on substantive grounds.

The Court will first address J&J's substantive argument as to Mr. Arndt's claim under § 350.  To state a claim for relief under the NYCPA, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009); *see* N.Y. Gen. Bus. § 349.  The NYCPA "on its face applies to virtually all economic activity."  *Karlin v. IVF Am.*, 93 N.Y.2d 282, 290 (N.Y. 1999).  To bring a claim under § 350, the plaintiff typically must point to a particular pronouncement or advertisement and show reliance.  *Leider v. Ralfe*, 387 F. Supp. 2d

---

[3] This argument would require the Court to find a causal connection between Mr. Arndt's injuries and actions and statements made *after* Mr. Arndt sustained his injuries. There can be no such causal connection. Therefore, Mr. Arndt cannot base his NYCPA claim on such statements.

283, 292 (S.D.N.Y. 2005); *see also* N.Y. Gen. Bus. § 350.  As J&J argues, Mr. Arndt has not

done this.  Moreover, Mr. Arndt does not respond to J&J's substantive arguments on this issue.

Thus, the Court will dismiss the NYCPA claim, to the extent that it is asserted under § 350.

As noted above, unlike the claim under § 350, J&J does not contend that Mr. Arndt failed

to plead a § 349 claim.  J&J's argument in favor of dismissing Mr. Arndt's § 349 claim is that

the claim is barred by the statute of limitations.  Under New York law, the statute of limitations

for a NYCPA claim is three years.  *See Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201,

208 (N.Y. 2001).  The analysis does not end there, however.  Pennsylvania has a borrowing

statute that dictates which statute of limitations applies to a foreign claim brought in

Pennsylvania.  That statute states:

> The period of limitation applicable to a claim accruing outside this Commonwealth shall
> be either that provided or prescribed by the law of the place where the claim accrued or
> by the law of this Commonwealth, whichever first bars the claim . . . "claim" means any
> right of action which may be asserted in a civil action or proceeding and includes, but is
> not limited to, a right of action created by statute.

42 Pa. C.S.A. § 5521.  J&J claims that this means that, for purposes of Pennsylvania's borrowing

statute, one must look to the Pennsylvania statute of limitations provided for claims for personal

injury/wrongful death (the type of damage for which Mr. Arndt seeks redress under the

NYCPA), and apply that statute of limitations here.  J&J contends that because personal injury

damages are not available under the Pennsylvania law most similar to the NYCPA, the

Pennsylvania Unfair Trade Practice and Consumer Protection Law ("Pennsylvania UTPCPL"),

the Court should ignore the six-year statute of limitations that Pennsylvania courts apply to

UTPCPL claims in determining which statute of limitations would apply to a NYCPA claim

under Pennsylvania law.  Mr. Arndt, naturally, argues that the three-year statute of limitations

should apply, claiming that because the claim was brought under a specific New York statute and

11

because New York provided a statute of limitations for this statutory action, the borrowing statute does not apply.

The Court disagrees with both sides' analysis.  In response to Mr. Arndt's argument, the borrowing statute clearly states that it applies to "any right of action which may be asserted in a civil action or proceeding and includes, but is not limited to, *a right of action created by statute*." 42 Pa. C.S.A. § 5521 (emphasis added).  To say that the borrowing statute has no application here because the claim is a statutory one is to contradict the plain language of the borrowing statute.  The borrowing statute explicitly applies to all claims, including "a right of action created by statute." *Id.*

Turning to J&J's argument, the borrowing statute requires this Court to apply the shorter of the statute of limitations provided by New York for a NYCPA claim, to wit, three years, or the statute of limitations that would be applied to such a claim by Pennsylvania law.  The question, then, is what statute of limitations would apply to a NYCPA-type claim under Pennsylvania law? Contrary to J&J's contentions, looking at the analogous Pennsylvania statute, the Pennsylvania UTPCPL, *is* instructive in determining what statute of limitations a Pennsylvania court would apply to a NYCPA claim.

Like the NYCPA, the Pennsylvania UTPCPL embraces a wide array of unfair trade practices.  While it is true that personal injury claims are not permitted under the Pennsylvania statute, *see Crumm v. K. Murphy & Co. Inc.*, No. CI-05-02780, 2009 WL 6057715 (Pa. Com. Pl. Sept. 16, 2009) (refusing to allow recovery for personal injuries under the Pennsylvania UTPCPL, noting that the law allows damages only for "any ascertainable loss of money or property, real or personal"), the law is otherwise similar to its New York counterpart in allowing claims for activities that may be analogized to many other types of claims, such as fraud, breach

of contract, breach of warranty, and other claims.  *See Gabriel v. O'Hara*, 534 A.2d 488, 494

(Pa. Super. 1987) (noting that the Pennsylvania UTPCPL "encompasses an array of practices that

might be analogized to passing off, misappropriation, trademark infringement, disparagement,

false advertising, fraud, breach of contract, and breach of warranty"); *Karlin*, 93 N.Y.2d at 290

(The NYCPA "on its face applies to virtually all economic activity").[4]

Because a Pennsylvania UTPCPL claim can be analogized to many different types of

claims depending on the facts of the individual case, Pennsylvania courts apply the six-year

catch-all statute of limitations under 42 Pa. C.S.A. § 5525(8), giving litigants some certainty.

*Gabriel*, 534 A.2d at 494 (applying the six-year catch-all statute of limitations and reasoning that

because "Plaintiffs would be uncertain as to which limitations period governed their UTPCPL

claim until the court determined whether their claim more closely resembled a tort action, a

contract action, or an action under some other statute[, a] uniform statute of limitations for the

UTPCPL is required to preclude such uncertainty and inconsistency.").  Given the similarities

between the NYCPA and the Pennsylvania UTPCPL, this Court determines that a Pennsylvania

court would apply the same catch-all statute of limitations to a claim under the NYCPA.  This is

not simply because it is analogous to the Pennsylvania UTPCPL – as noted above, it is not

perfectly analogous – but rather it is for the same reasons underlying Pennsylvania courts'

application of the catch-all statute of limitations to the Pennsylvania UTPCPL:  The NYCPA

encompasses a wide range of conduct that can resemble many types of claims, and, absent

specific legislative guidance, application of the catch-all is necessary for the sake of certainty.

---

[4] Indeed, both statutes were modeled after the Federal Trade Commission Act.  *See Goshen v. Mutual Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 (N.Y. 2002) ("[The NYCPA], much like its federal counterpart, the Federal Trade Commission Act . . . , is intentionally broad"); *Gabriel*, 534 A.2d at 491 ("Pennsylvania's UTPCPL is modeled on the Federal Trade Commission Act.").

If a Pennsylvania court would apply a six-year statute of limitations, and the NYCPA carries with it a three-year statute of limitations under New York law, pursuant to Pennsylvania's borrowing statute, the shorter of the two, *i.e.,* the three-year period, applies to Mr. Arndt's claim. Given this, Mr. Arndt's NYCPA claim under § 349 is not time barred and will not be dismissed.

### C.  Civil Conspiracy and Punitive Damages

The parties agree that if Mr. Arndt's tort claims are all dismissed, his civil conspiracy claim goes with them.   Here, the Court has dismissed all of Mr. Arndt's tort claims, and his civil conspiracy claim must go with them.  As to his punitive damages claims, the parties agree that if the NYCPA claim is not dismissed, Mr. Arndt may continue with a punitive damages claim as limited by the NYCPA.  Therefore, the punitive damage claim will survive to the extent such a claim is allowed under the NYCPA.

CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part J&J's motion to dismiss. An appropriate Order follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge